SIERRA CREST BUSINESS LAW GROUP
Glenn Meier, Esq. (NV Bar No. 6059)
gmeier@sierracrestlaw.com
Jerry C. Carter, Esq. (NV Bar No. 5905)
jcarter@sierracrestlaw.com
6770 S. McCarran (1st Floor) Reno, NV 89509
(775) 448-6070 | Fax: (775) 473-8292
*Attorneys for Plaintiff Nathan Garofalos*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NATHAN GAROFALOS, an individual,

                                Plaintiff,

        vs.

WAYNE PRIM III, an individual;
CAMERA CAR LLC, a Nevada limited
liability company; CAMERA CAR
FACTORY, INC, a California
Corporation; DAVID MACDONALD, an
individual, PRIM & ASSOCIATES LLC, a
Nevada limited liability company; PRIM
VENTURES INC, a Nevada corporation;
VISUAL WAREHOUSE LLC, a Nevada
limited liability company; CATALYTIC
FOOTAGE LLC, an Oklahoma limited
liability company; DOES 1-10; and
ROES 1-20,

                                Defendants.

CASE NUMBER:

**COMPLAINT**

        Plaintiff, NATHAN GAROFALOS, an individual ("Garofalos" or "Plaintiff"), by and through his undersigned counsel, SIERRA CREST BUSINESS LAW GROUP, hereby files this Complaint as follows against Defendants WAYNE PRIM III an individual ("Prim"), CAMERA CAR LLC a Nevada limited liability company ("Camera Car"), CAMERA CAR FACTORY, INC, a California corporation ("Camera Car Factory"), DAVID MACDONALD an individual ("MacDonald"), PRIM & ASSOCIATES LLC a Nevada limited liability company ("PAA"), PRIM VENTURES INC a Nevada corporation ("Prim Ventures"), VISUAL WAREHOUSE LLC, a Nevada limited liability company ("Visual Warehouse"), CATALYTIC FOOTAGE LLC, a Oklahoma limited

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . .  1

liability company ("Catalytic Footage"), DOES 1-10, and ROES 1-20 (collectively "Defendants"):

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim pursuant to 28 U.S.C §§ 1331 and 1338(a), as that claim arises under the Copyright Act of 1976, 17 U.S.C § 501 et seq.

2. This Court has supplemental jurisdiction over all related state law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the copyright claim.

3. This Court has personal jurisdiction over all Defendants because each Defendant has purposefully availed itself of the privilege of conducting business with Plaintiff, a Nevada resident, entering into contracts, communications, and commercial dealings directed toward Nevada, and giving rise to the claims alleged herein.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the District of Nevada, including Incline Dynamic Outlet LLC's formation and operations, the transactions and conduct underlying the breach and diversion claims, and communications directed to and from Plaintiff in this District.

## THE PARTIES

5. Plaintiff Nathan Garofalos is, and at all relevant times, was a resident and citizen of the State of Nevada.

6. Defendant Wayne Prim III is a resident and citizen of the State of Utah with a home address in Park City, Utah. Prim is, and at all relevant times was, the majority member of Incline Dynamic Outlet LLC (IDO) and a Co-Manager of that entity.

7. Defendant Camera Car LLC ("Camera Car") is a limited liability company

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

organized under the laws of the State of Nevada.

8.    On information and belief, Camera Car was formed on June 5, 2019. On information and belief, Prim holds a controlling interest in Camera Car.

9.    Defendant Camera Car Factory, Inc is a California corporation with a principal place of business at 404 South Teri Circle, Anaheim, California 92804.

10.    On information and belief, Camera Car Factory is associated with and operated in concert with Camera Car LLC and David MacDonald.

11.    Defendant David MacDonald is a citizen of the State of California with a home address in Anaheim, California.

12.    On information and belief, MacDonald holds an ownership or management interest in Camera Car LLC and Camera Car Factory, Inc.

13.    Defendant Prim & Associates LLC is a limited liability company organized under the laws of the State of Nevada.

14.    On information or belief, PAA is a Prim family entity that Defendant Prim used to receive, hold, and deploy funds and assets diverted from IDO.

15.    Defendant Prim Ventures Inc. is a Nevada corporation.

16.    On information and belief, Prim Ventures is a Prim family entity through which Defendant Prim employed the accountants and administrators who managed IDO's financial functions and maintained records thereof.

17.    Defendant Visual Warehouse LLC is a limited liability company organized under the laws of the State of Nevada.

18.    Visual Warehouse was used to hold purportedly personally owned assets of Prim, including, but not limited to, Leica Thalia Cinema Prim Lenses, that were insured under IDO's insurance policy and rented through IDO from Prim's benefits.

19.    Defendant Catalytic Footage LLC is an Oklahoma limited liability company. Catalytic Footage operates a commercial stock footage website, catalyticfootage.com, that showcases and sells Garofalos' copyrighted aerial and

camera car footage without authorization or compensation.

20. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants designated as Does 1 through 10 and Roes 1 through 20 are presently unknown to Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that Defendants Does 1 through 10 and Roes 1 through 20 took some part in that acts and omissions complained of herein, including, but not limited to receipt of IDO assets without authorization and, as a proximate result of such acts and omissions, incurred legal liability to Plaintiff for the relief sought herein. Plaintiff will request permission to amend this Complaint when the identities of Defendants Does 1 through 10 and Roes 1 through 20 become known to him.

21. At all material times and during the acts alleged herein, each Defendant was acting as the agent of each and every other Defendant within the course and scope of its agency or employment, and all acts conducted and alleged herein were known to, authorized, and ratified by each and every Defendant, and / or liability therefore has been assumed by each and every Defendant.

**GENERAL FACTUAL ALLEGATIONS**

**A. Garofalos' Industry Background and the Formation of IDO**

22. Garofalos is a four-time primetime Emmy nominated director of photography. Beginning in late 2007 he rented and operated digital cinema cameras, and from 2008 onward operated gyro-stabilized camera platforms for use in helicopters, camera cars, and boats for film and television productions. By 2013 Garofalos developed an established, active filmwork business and was subleasing gyro-stabilized, including Cineflex and Gyro-Stabilized Systems, LLC ("GSS") gimbals, to production companies.

23. Garofalos and Prim have been close personal friends since their early teens having competed together in tennis and participated in the Heavenly Ski Foundation. Garofalos served as a groomsman in Prim's wedding. This longstanding

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . … . . . . . . . . . . . . . . . . . . . . . . . . 4

personal relationship was material to Garofalos' subsequent reliance on Prim and his advice in connection with the business dealings in this case.

24.    In or about April 2013, Garofalos shared a business plain with Prim for a proposed company called Halcyon Visuals – intended to operate and rent gyro-stabilized mobile camera platforms for motion picture, commercial, documentary, television, and action sports film projects. Prim declined to invest but offered to help build a website.

25.    In late December 2014 and early January 2015, Prim initiated discussions with Garofalos about participating in Garofalos' intended business. On or about January 12, 2015, Prim approached Garofalos with financial models that Prim had assembled for a prospective joint company. Between January 2015 and May 2015, the parties discussed the logistics for a company to operate and rent high-tech-gyro-stabilized mobile camera platforms. It was decided during this period that the company would be called Incline Dynamic Outlet, LLC ("IDO").

26.    On or about May 13, 2015, Prim described proposed "Revenue Waterfall" structure under which all revenue would flow to Prim first until he received his initial investment back plus a 15-20% internal rate of return, after which distributions would be made according to membership interests. Garofalos agreed to this structure.

27.    On a phone call in late May 2015, Prim told Garofalos that IDO would use Brian Ring as its legal counsel, representing that Ring was "fair to both parties" and would save the future company funds.

28.    Prim did not disclose that Ring was licensed to practice law only in California and had never been admitted to the Nevada bar, the state in which IDO was being organized.

29.    Prim did not disclose that Ring was in house counsel for Prim family entities, including Prim Ventures, Inc.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . .    5

30.    On or about June 4, 2015, Prim sent Garofalos an operating agreement for IDO with the cover email "Here it is."

## B. The Operating Agreement and Its Key Provisions

31.    The Operating Agreement for Incline Dynamic Outlet, LLC, dated June 4, 2015, as subsequently amended by the First Amendment (March 10, 2016), Second Amendment (October 3, 2017), and Third Amendment (March 12, 2019) (collectively, the "Operating Agreement" or "OA"), governs the rights and obligations of Garofalos and Prim as the two members of IDO.

32.    The OA established initial membership interests of 78.92% for Prim and 21.08% for Garofalos, and provided that members' voting interests were in proportion to their percentage interests.

33.    The OA provides for several decisions that must be made by a "Majority of Members," defined as voting members whose voting interests represent more than 50% of all voting interests, a threshold Prim satisfies alone.

34.    The OA provides in section 5.5 that: "The Managers shall cause all assets of the Company to be held in the name of the Company."

35.    The OA provides in section 5.6 that: "All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company… Withdrawal from such accounts shall require the signature, and or authorization of a Manager."

36.    The OA provides in section 6.1 that: "Complete books of account of the Company's business, in which each Company transaction shall be fully and accurately entered, shall be kept at the Company's principal executive office."

37.    The OA requires in sections 6.4: "Managers must maintain financial statements for the six most recent fiscal years and books and records for the current and past four fiscal years."

38.    The OA also contained a one-sided provision applicable only to Garofalos (§5.4), requiring that all filmwork utilizing gyroscopic stabilized systems

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

offered to Garofalos be first offered to IDO. No reciprocal restriction was imposed on Prim.

39.    The First Amendment added a three-year post departure noncompete applicable only to Garofalos; no reciprocal noncompete was imposed on Prim.

40.    The Second Amendment (October 3, 2017) established a $5,000 monthly Member Guaranteed Payment to Garofalos in exchange for marketing services. The Third Amendment (March 12, 2019) increased the Member Guaranteed Payment to $12,500 per month and provided that all filmwork services revenue would belong 100% to IDO. In September of 2023, Prim agreed to increase the monthly payment to $16,500 per month, and IDO consistently paid that amount until on or around December of 2025.

### C. IDO Operations and Prim's Pattern of Self-Dealing

41.    From its formation, Prim held and exercised exclusive control over IDO's financial infrastructure. IDO's accounting and financial functions were performed by Dabid Halverson, Meghan Dorris, and Trudi Merriam (though not limited to just these named), employees of Prim Ventures Inc., not of IDO. Garofalos had no independent ability to verify IDO's financial condition and relied entirely on Prim and Prim controlled personnel for financial information.

42.    In March 2016, IDO purchased a Polaris RZR side-by-side vehicle titled in IDO's name. Prim subsequently departed from the practice of titling assets intended for IDO in the company as required by the operating agreement.

43.    In November 2017, Prim purchased Leica Thalia Cinema Prime Lenses and held them in Visual Warehouse LLC, a Prim controlled entity, rather than in IDO.

44.    Despite not being IDO's property, Prim directed Garofalos to rent the lenses out through IDO's operations, and IDO housed and stored the lenses. IDO also paid the insurance on the lenses as though they were IDO assets.

45. This arrangement benefited Prim personally while imposing costs on IDO.

46. In August 2018, Garofalos arranged the purchase of a 2015 Lamborghini Huracan for IDO as a camera car that subsequently became known as "the HuraCAM".

47. Despite being an IDO asset, Prim directed that the HuraCAM be titled in Prim's personal name.

48. IDO permanently modified the HuraCAM to accept camera mounts and accessories for filmwork.

49. IDO paid registration and insurance costs on the HuraCAM.

50. Prim subsequently depreciated the Lamborghini through IDO.

51. Throughout IDO's operational life, Prim insured multiple personally titled assets on IDO's Taylor & Taylor insurance policy.

### D. The Camera Car Venture

52. On or about September 6, 2018, while Garofalos was performing a Ferrari filming job on behalf of IDO, he met David MacDonald, an experienced camera car driver then working with Filmotechnic USA. Garofalos initiated the relationship with MacDonald and began exploring a potential collaboration to expand IDO's camera stabilization operations.

53. In April 2019, after introducing MacDonald emailed Garofalos and Prim with startup expense projections showing the expansion IDO would realize through the Camera Car Venture.

54. On or about May 2, 2019, MacDonald emailed Garofalos and Prim with startup expense projections showing the expansion IDO would realize through the Camera Car Venture.

55. On or about May 22, 2019, Garofalos presented Prim and MacDonald via group text an opportunity with MSG (Madison Square Garden), the owner of the Sphere in Las Vegas, to test an arm car.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . 8

56. Garofalos originated the MSG/Sphere opportunity. On information and belief, Camera Car subsequently provided services to third parties, including but not limited to, MSG/Sphere after Garofalos was excluded from the venture.

57. On or about May 18, 2019, two parallel purchase agreements were issued by Black Unicorn for the same equipment, one Black Unicorn gyro-stabilized crane and two stabilized heads totaling $850,000.

58. One of the two Black Unicorn invoices named "IDO Mobile Rentals, LLC" (i.e., IDO) as the buyer and one named Camera Car, LLC as the buyer. Under both agreements, title passed to the buyer upon receipt.

59. On information and belief, the Black Unicorn equipment was purchased with IDO funds and insured under IDO's Taylor & Taylor insurance policy from July 2, 2019.

60. On information and belief, Camera Car LLC was formed as a separate entity on June 5, 2019.

61. Garofalos was not informed of Camera Car's formation as a separate entity and was not provided with a copy of its operating agreement or any membership interest in it.

62. In June 2019, Prim purchased a Jeep Trackhawk for use as a camera car platform for the Black Unicorn equipment.

63. The Trackhawk was titled in Prim's personal name.

64. Garofalos took delivery of the Trackhawk for IDO on July 9, 2019.

65. From July 10, 2019, through late February 2020, Garofalos personally participated in the fabrication of the Jeep Trackhawk camera car at Scott Herring's hangars in Georgetown, California.

66. Neither Garofolos nor IDO received any separate compensation for Garofalos' work in fabricating the Trackhawk camera car.

67. Trackhawk camera car build costs were paid by IDO.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . 9

68. On information and belief, Camera Car LLC had no independent bank account during the build period. All camera car expenses were commingled with IDO expenses.

69. On or about September 19, 2019, Prim unilaterally changed the password to Garofalos' IDO email account (nathan@inclinedynamicoutlet.com) without Garofalos' authorization, locking Garofalos out.

70. When confronted, Prim falsely claimed that Garofalos had asked him to reset the password.

71. On or about December 15, 2020, Prim interfered with Garofalos' IDO email a second time, causing incoming client emails to bounce.

72. On or about September 10, 2020, a private call occurred among MacDonald, Prim, and Ring, deliberately excluding Garofalos.

73. On information and belief, during the September 10, 2020, call, MacDonald proposed excluding Garofalos from Camera Car LLC.

74. On or about August 23, 2020, more than a year after Camera Car's formation, Prim gave Garofalos a copy of the Camera Car, LLC Operating Agreement. Garofalos was not granted any membership interest in Camera Car.

75. On or about June 22, 2021, MacDonald directed Garofalos to stop promoting Camera Car assets and to forward all client inquiries to MacDonald.

76. On or about August 2, 2021, Prim directed MacDonald to move Camera Car equipment from the IDO shop to Southern California.

77. Prim directed the move of the Camera Car equipment without Garofalos' agreement.

78. In October 2021, while Garofalos was in Alaska, filming for IDO, MacDonald visited a business, called Elite Customs in Reno, Nevada, that was performing work on an IDO camera car build. MacDonald communicated to the shop owner that Camera Car was "under new operation authority' with directions coming MacDonald and Ring, not Garofalos.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . 10

79. In or around October or November of 2021, Prim deleted Garofalos' Camera Car email account, nathan@cameracar.com without notifying Garofalos.

80. Also, in or around October or November of 2021, Prim took down the IDO website from public access.

## E. THE COPYRIGHT INFRINGEMENT

81. In November 2019, Karen Kitchen, Prim's mother-in-law, contacted Garofalos about stock footage sales using an IDO email address (karen@inclinedynanicoutlet.com).

82. Unbeknownst to Garofalos at the time, K. Kitchen was not acting on behalf of IDO.

83. On or about August 21, 2021, K. Kitchen emailed Garofalos requesting footage for a website she was building. Her email stated: "Wil mentioned South Africa and whales in Norway. Really catchy, vibrant and interesting footage would be perfect." Prim specifically directed K. Kitchen to Garofalos' copyright footage.

84. Following this solicitation, K. Kitchen launched catalyticfootage.com, a commercial stock footage website showcasing and offering Garofalos' copyrighted aerial and camera car footage for sale through Catalytic Footage LLC.

85. No licensing agreement, assignment, or other authorization was ever executed between Garofalos and Catalytic Footage LLC. Garofalos received no compensation for the use of his footage.

86. On August 12, 2022, K. Kitchen emailed Garofalos from karen@CatalyticFootage.com regarding approximately 61 clips (approximately 30 minutes) of Hawaii aerial footage she had selected as "the very best of the best clips."

87. Garofalos is the author and owner of all footage at issue. The footage is fixed audiovisual work entitled to federal copyright protection.

/ / /

/ / /

/ / /

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . 11

**F. THE INSURANCE PROCEEDS DIVERSION AND FINANCIAL CONCEALMENT**

88.    In late September 2022, an IDO GSS Cinema Mini (C512) stabilized camera system was damaged in the field. The system was returned to GSS in October 2022 and declared a total loss. IDO submitted an insurance claim.

89.    On or about March 27, 2023, $421,792.00 in insurance proceeds was deposited into IDO's Wells Fargo bank account. Garofalos notified Dorris of the deposit the same day. Prim was aware of the deposit.

90.    On information and belief, Ring advised the transfer of the $421,792 from IDO's Wells Fargo account to a Prim & Associates LLC account. On or about March 30, 2023, three days after the deposit, the entire $421,792.00 was transferred from IDO's Wells Fargo account to an account controlled by PAA.

91.    The transfer of insurance proceeds was made without Garofalos' knowledge or consent. On information and belief, the funds were subsequently used by Prim for personal purposes.

92.    Prim, or others acting at Prim's direction, omitted the $421,792 deposit from every monthly P&L statement sent to Garofalos from April 2023 through April 2024.

**G. Prim's Exit Strategy and Escalation (2025–2026)**

93.    On October 3, 2025, Garofalos and Prim held a Managers' meeting via Zoom.

94.    During the October 3 Zoom, Prim declared he was no longer interested in IDO and wanted to turn his attention to other business ventures.

95.    During this call Prim further expressed his intent to seek a buyer for his interest in IDO and indicated he was communicating with multiple prospects.

96.    Prim has never presented a buyer for his interest in IDO.

97.    During the October 3 Zoom Garofalos and Prim discussed two IDO contracts, a Deadliest Catch contract running through March 1, 2026, and an additional pending contract with significant value, (the "Pending Contract").

98.   On or about October 13, 2025, Prim emailed Garofalos and Ring directing Garofalos to "put a pause on signing any new contracts or bids for clients until further notice" and to "send any potential jobs my way for review." This directive was issued unilaterally by Prim.

99.   Prim's directive to not undertake any new business served Prim's personal interest in exiting IDO and was contrary to the purpose of the IDO Operating Agreement.

100.  Since October of 2025, Garofalos attempted to engage Prim in negotiations to wind up the affairs of IDO, but Prim has refused to substantively engage beyond engaging counsel.

101.  Prim has paid his personal legal fees in this matter with IDO funds.

102.  Per the Operating Agreement, IDO owed Garofalos a monthly management fee.

103.  Beginning in December 2025, IDO, at Prim's sole direction, ceased paying Garofalos' monthly management fee.

104.  Garofalos has continued to work on IDO's behalf at all times relevant herein.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(Against Defendant Prim)**

105.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

106.  The Operating Agreement, as amended, is a valid and enforceable contract between Garofalos and Prim.

107.  Garofalos performed all of his obligations under the Operating Agreement, including providing filmwork services, operational management, marketing services, and the management of IDO's day-to-day operations.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . 13

108.    Prim breached the Operating Agreement in multiple ways including, but not limited to, failing to title all IDO assets in the Company's name, failing to maintain all IDO funds in company accounts, failing to keep complete books and records of the company, failing to pay Garofalos' monthly management fee, and commingling IDO assets with other entities.

109.    As a direct and proximate result of Prim's breaches, Garofalos has suffered damages including, but not limited to: diminution in the value of his membership interest in IDO; loss of distributions that would have been generated had Company assets been properly held and Company funds properly maintained; the specific value of the $421,792 diverted from IDO; and loss of the financial information necessary to protect his rights as a member.

110.    In addition to compensatory damages, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

### SECOND CLAIM FOR RELIEF
### Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Defendant Prim)

111.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

112.    The Operating Agreement contains an implied covenant of good faith and fair dealing that prohibits each party from taking actions that have the purpose or effect of destroying the other party's right to receive the benefits of the agreement.

113.    Prim held and exercised exclusive control over IDO's financial functions through Prim Ventures employees, giving him information advantages and operational authority that he used systematically against Garofalos' interests.

114.    Prim acted in a manner unfaithful to the OA's core purpose, destroying Garofalos' right to receive the contract's benefits.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

115.   Garofalos' justified expectations under the Operating Agreement, to share in IDO's business growth, to receive his contractual management fees, and to participate in managing IDO's affairs, were systematically denied by Prim's conduct.

116.   As a direct and proximate result of Prim's breach of the covenant of good faith and fair dealing, Garofalos has suffered damages including, but not limited to, withheld management fees; lost distributions; diminution in the value of his membership interest; and lost business opportunities including the Camera Car venture and the Pending Contract.

117.   In addition to compensatory damages, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

**THIRD CLAIM FOR RELIEF**
**Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against Defendant Prim)**

118.   Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

119.   A special relationship existed between Garofalos and Prim that went beyond an ordinary arm's-length commercial transaction. The following factors, individually and in combination, establish the existence of that special relationship:

a)   Prim exercised complete and exclusive control over all of IDO's financial functions leaving Garofalos with no independent ability to verify IDO's financial condition or detect unauthorized transactions;

b)   Garofalos was entirely dependent on Prim and Prim-controlled personnel for all financial information about the Company in which he held a membership interest;

c)   Prim held himself out as managing IDO's finances and legal affairs in the interests of both members, inducing Garofalos to forgo independent counsel and independent financial monitoring; and

d) The relationship between the parties originated in a decades-long personal friendship of the type that courts recognize as creating heightened reliance and vulnerability. For example, Garofalos was a groomsman in Prim's wedding, and this personal trust informed Garofalos' decision to rely on Prim's representations and to forgo independent protection of his interests.

120. Prim acted in bad faith and with knowledge that his conduct was unreasonable. Prim exploited the special relationship to divert Company assets, conceal financial transactions, and appropriate the benefit of Garofalos' labor, all while maintaining the appearance of a legitimate business arrangement.

121. As a direct and proximate result of Prim's tortious breach of the covenant of good faith and fair dealing, Garofalos has suffered compensatory damages as alleged herein.

122. Prim's conduct was willful, malicious, and carried out in conscious disregard of Garofalos' rights, entitling Garofalos to punitive damages pursuant to NRS 42.005.

123. In addition to compensatory damages, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

**FOURTH CLAIM FOR RELIEF**
**Judicial Dissolution Under NRS 86.495**
**(Against Defendant Prim)**

124. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

125. Garofalos is a member of IDO, a Nevada limited liability company. As such, he has standing under NRS 86.495 to petition this Court for judicial dissolution.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . 16

126. Under NRS 86.495, the Court has the authority to decree the dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business of the company in conformity with the articles of organization or operating agreement.

127. Based on the conduct of Prim, as alleged herein, it is not reasonably practicable to carry on the business of IDO. Accordingly, Garofalos seeks a decree from this Court dissolving IDO and distributing its assets as determined through the accounting requested in Plaintiff's Fifth Claim for Relief.

128. In addition to a decree of dissolution, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

**FIFTH CLAIM FOR RELIEF**
**Accounting**
**(Against Defendant Prim)**

129. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

130. As a member and co-Manager of IDO, Garofalos has both statutory rights under NRS Chapter 86 and contractual rights under the Operating Agreement to complete and accurate financial records of IDO's business and to financial statements covering the current and prior fiscal years.

131. The accounts between IDO and Prim-controlled entities, are complex and hopelessly intermingled.

132. Garofalos has been systematically denied accurate financial information through the conduct described herein and has no adequate remedy at law to obtain a complete accounting of IDO's finances.

133. Garofalos is entitled to an equitable accounting from Defendant Prim that fully discloses all trafficking of IDO assets through other entities including, but

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . 17

not limited to, Visual Warehouse, LLC, Camera Car, LLC, Camera Car Factory, Inc., Catalytic Footage, LLC Prim Ventures, and PAA.

134. The accounting is also necessary to establish the fair value of IDO for purposes of dissolution.

135. In addition to an accounting, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

**SIXTH CLAIM FOR RELIEF**
**Conversion**
**(Against Defendants Prim, Prim & Associates LLC, Camera Car LLC, Camera Car Factory Inc., Prim Ventures Inc., and Visual Warehouse LLC)**

136. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

137. At all relevant times, Garofalos held a membership interest in IDO entitling him to a proportionate share of IDO's assets and revenue.

138. Defendants intentionally and without authorization exercised dominion and control over IDO's property inconsistent with Garofalos' rights as alleged herein.

139. As a direct and proximate result of Defendants' conversion, Garofalos has suffered damages in an amount to be determined at trial.

140. Defendant's conversion was willful and malicious, entitling Garofalos to punitive damages pursuant to NRS 42.005.

**SEVENTH CLAIM FOR RELIEF**
**Constructive Fraud**
**(Against Defendant Prim)**

141. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

142. A relationship of confidence and trust existed between Garofalos and Prim that imposed on Prim duties of full and frank disclosure and fair dealing.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . 18

143. Prim breached the duties arising from this confidential relationship in multiple ways as alleged herein.

144. As a direct and proximate result of Prim's constructive fraud, Garofalos has suffered damages including lost distributions, diminished membership interest value, loss of the Camera Car opportunity, and economic harm resulting from his inability to detect and respond to the financial diversions. Prim's conduct was willful and malicious, entitling Garofalos to punitive damages pursuant to NRS 42.005.

**EIGHTH CLAIM FOR RELIEF**
**Intentional Interference with Prospective Economic Advantage**
**(Against Defendants Prim, Camera Car LLC, Camera Car Factory Inc., and MacDonald)**

145. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

146. Garofalos, as a four-time Emmy-nominated director of photography with over fifteen years of established industry relationships, has numerous prospective economic advantages and prospective contractual relationships with production companies, studios, and equipment lessees in the filmwork industry.

147. Defendants knew of these prospective relationships. Prim had full knowledge of Garofalos' industry contacts through IDO's operations. MacDonald had direct knowledge through his working relationship with Garofalos. Camera Car and Camera Car Factory benefited directly from Garofalos' industry relationships.

148. Defendants intentionally committed the following wrongful acts designed to disrupt Garofalos' prospective economic relationships:

    a) Prim, while holding Garofalos captive through the OA's one-sided noncompete, built Camera Car using IDO resources and Garofalos' IDO-compensated labor, then excluded Garofalos from any ownership interest in the venture, depriving him of the economic benefit of his own relationships and expertise;

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . 19

b) Prim and Camera Car diverted the MSG/Sphere Las Vegas opportunity to Camera Car LLC, from which Garofalos was excluded, after Garofalos was marginalized from Camera Car's operations;

c) Prim unilaterally blocked the Pending Contract, a contract with significant value to IDO that Garofalos developed without legitimate business justification and solely to serve Prim's personal interest in exiting IDO; and

d) MacDonald directed Garofalos to cease promoting Camera Car assets and forwarding client inquiries to Camera Car, severing Garofalos from client relationships he had originated while the noncompete prevented him from pursuing those relationships independently.

149. Prim further seeks to block Garofalos' continued ability to develop business opportunities by denying him future business opportunities through IDO.

150. Defendants' conduct was independently wrongful.

151. As a direct and proximate result of Defendants' interference, Garofalos has suffered damages including lost industry income, lost business opportunities, and the suppression of his earning capacity over the period in which the noncompete continues to bind him while Defendants exploited his relationships for their own benefit. The exact amount of damages will be determined at trial.

152. In addition to general, special, and consequential damages, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

### NINTH CLAIM FOR RELIEF
### Intentional Interference with Contractual Relations
### (Against Defendants Prim, Camera Car LLC, and MacDonald)

153. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . 20

154. Garofalos had valid, existing contractual relationships with third parties including production companies, equipment lessees, and clients such as Original Productions, Netflix, Stept Studios, and Discovery/Deadliest Catch.

155. Defendants knew of these existing contractual relationships through Garofalos' role as IDO's operational manager and through their direct dealings with IDO's clients.

156. Defendants intentionally induced or caused the breach or disruption of Garofalos' contractual relationships, not for legitimate business purposes, but to serve Prim's personal interest in exiting IDO and redirecting business to Camera Car:

    a) Prim repeatedly delayed approving contractor payment authorizations, causing Garofalos to manage delayed payments to vendors and contractors with whom he had ongoing working relationships, damaging those relationships;

    b) Prim's October 2025 unilateral email directive to halt all new contracts while the Pending Contract was pending, and active client obligations existed disrupted Garofalos' ability to honor and develop his existing and prospective client relationships;

    c) Prim and Camera Car diverted the MSG/Sphere opportunity from IDO to Camera Car after Garofalos originated the client relationship, depriving Garofalos of the contractual benefits of the client relationship he had developed; and

    d) Prim, on or about August 28, 2025, directed others to assist in moving IDO equipment to Prim-family property, disrupting IDO's ability to fulfill existing and pending client commitments.

157. As a direct and proximate result of Defendants' interference, Garofalos has suffered damages including lost contractual revenues, damage to his

professional reputation and client relationships, and other economic harm. The exact amount of damages will be determined at trial.

**TENTH CLAIM FOR RELIEF**
**Copyright Infringement**
**(17 U.S.C. § 501 et seq.)**
**(Against Defendants Catalytic Footage LLC, and Prim)**

158. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

159. Garofalos is the sole author and owner of the footage at issue in this claim. The footage consists of original audiovisual works fixed in a tangible medium of expression, entitled to protection under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

160. Defendant Catalytic Footage LLC, reproduced, distributed, and publicly displayed Garofalos' copyrighted footage on catalyticfootage.com for commercial purposes offering it for sale as stock footage without any license, authorization, or consent from Garofalos.

161. Prim directed K. Kitchen to Garofalos' copyrighted footage, as evidenced by K. Kitchen's August 21, 2021, email stating "Wil mentioned South Africa and whales in Norway." Prim thereby actively participated in and contributed to the infringement. In addition, Prim failed to protect these intellectual property assets and failed to do so, affirmatively directing those assets to a family member for commercial exploitation.

162. Catalytic Footage has infringed Garofalos' exclusive rights under 17 U.S.C. § 106, including without limitation his exclusive rights of reproduction, distribution, and public display. The infringement has been ongoing since at least the launch of catalyticfootage.com following K. Kitchen's solicitation of footage in August 2021 and is continuing at the time of this filing.

163. As a result of Defendants' infringement, Garofalos is entitled to:

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . 22

a) Actual damages and disgorgement of Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b);

b) Statutory damages pursuant to 17 U.S.C. § 504(c) for any works registered prior to the commencement of infringement or within three months of first publication;

c) Permanent injunctive relief pursuant to 17 U.S.C. § 502, prohibiting Defendants from continuing to reproduce, distribute, display, or otherwise exploit Garofalos' copyrighted footage; and

d) Attorneys' fees and costs pursuant to 17 U.S.C. § 505 where applicable.

**ELEVENTH CLAIM FOR RELIEF**
**Declaratory Relief**
**(28 U.S.C. § 2201; NRS Chapter 30)**
**(Against Defendants Prim, Camera Car LLC, Camera Car Factory Inc.,**
**Prim Ventures Inc., and Prim & Associates LLC)**

164. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

165. An actual, justiciable controversy exists between the parties with respect to: (a) the enforceability of the noncompete provisions imposed on Garofalos by the Operating Agreement and First Amendment; and (b) the ownership rights in Camera Car LLC's assets and equity to the extent those assets and that equity were built using IDO's resources and Garofalos' IDO-compensated labor. Declaratory relief will terminate the uncertainty and controversy giving rise to this proceeding.

**A. INVALIDITY OF THE NONCOMPETE**

166. The OA §5.4 and First Amendment §7 impose a noncompete on Garofalos with no reciprocal restriction on Prim.

167. The noncompete is invalid and unenforceable on multiple independent grounds including, but not limited to, lack of adequate consideration running to the restrained party, overbreadth, equitable estoppel, and Prim's unclean hands.

/ / /

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## B. OWNERSHIP RIGHTS IN CAMERA CAR

168. Camera Car LLC was built almost entirely on IDO's resources and Garofalos' IDO-compensated labor. The Black Unicorn equipment was purchased for IDO and insured under IDO's policy; the Trackhawk build was funded through IDO's American Express account; MacDonald's compensation was paid from IDO and PAA during the build period; and the Camera Car venture was explicitly described by MacDonald as "expanding on the model which Incline Dynamics has proven to be successful."

169. Camera Car was formed as a separate entity in June 2019, without Garofalos' knowledge and without providing him any membership interest.

170. Garofalos is entitled to a declaration that Camera Car's assets and equity are held subject to IDO's interest, and therefore Garofalos' proportionate interest as an IDO member.

### TWELFTH CLAIM FOR RELIEF
### Constructive Trust
**(Against Defendants Prim, Prim & Associates LLC, Camera Car LLC, Camera Car Factory Inc., Visual Warehouse LLC, and Catalytic Footage LLC)**

171. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

172. Defendants obtained and currently hold property that in equity and good conscience belongs to Garofalos, having acquired it through a combination of breach of confidential relationship, conversion, and fraudulent concealment. Allowing Defendants to retain the benefit of these assets without a constructive trust would unjustly enrich them at Garofalos' expense.

173. Garofalos has no adequate remedy at law to protect these assets pending resolution of this action. Immediate imposition of a constructive trust is necessary to prevent further dissipation, transfer, encumbrance, or relocation of the assets identified above.

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .... . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**THIRTEENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Defendants Prim, Prim & Associates LLC, Camera Car LLC,**
**Camera Car Factory Inc., Prim Ventures Inc., K. Kitchen, C. Kitchen, and**
**Catalytic Footage LLC)**

174. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

175. This claim is pleaded as a supplemental and alternative theory to other claims and is asserted to the extent those claims do not reach particular defendants or transactions.

176. Garofalos conferred the following benefits on Defendants as alleged herein.

177. Each Defendant appreciated and had knowledge of the benefits conferred, accepted and retained those benefits, and has failed to compensate Garofalos for the value received. It would be inequitable under all circumstances to allow Defendants to retain these benefits without payment.

178. As a direct result of Defendants' unjust enrichment, Garofalos has suffered damages in an amount to be determined at trial, including restitution of the value of all benefits improperly retained by Defendants.

179. In addition, general special and consequential damages, Garofalos is entitled to pre- and post-judgment interest, attorneys' fees and costs to the extent permitted by law and the Operating Agreement, and such other relief as the Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nathan Garofalos respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

1.      General, special, and consequential damages in an amount to be determined at trial;

2.      Punitive damages where appropriate to redress Defendants' conduct;

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . 25

3.    A decree of judicial dissolution of IDO;

4.    An order requiring Defendant Prim to provide a complete and accurate accounting of all IDO financial transactions, asset dispositions, and transfers to or from Prim-affiliated entities including, but not limited to, Visual Warehouse, LLC, Camera Car, LLC, Camera Car Factory, Inc., Catalytic Footage, LLC Prim Ventures, and PAA;

5.    Damages as permitted under 17 U.S.C. § 101 et seq.;

6.    A declaration that the noncompete provisions in OA § 5.4 and First Amendment § 7 are invalid and unenforceable as to Garofalos;

7.    A declaration that Camera Car LLC's assets and equity, are, in fact, assets of and equity in IDO;

8.    An order imposing a constructive trust over all assets of IDO converted by Defendants;

9.    Pre- and post-judgment interest at the maximum rate permitted by law;

10.    Attorneys' fees and costs to the extent permitted by law, contract, or statute;

11.    Such other and further relief as this Court deems just and proper.

DATED: March 20, 2026          SIERRA CREST BUSINESS LAW GROUP


                                            /s/ *Jerry Carter*

                              By: _____
                              Glenn Meier, Esq. (NV Bar No. 6059
                              gmeier@sierracrestlaw.com
                              Jerry C. Carter, Esq. (NV Bar No. 5905)
                              jcarter@sierracrestlaw.com
                              6770 S. McCarran (1st Floor) Reno, NV 89509
                              (775) 448-6070 | Fax: (775) 473-8292
                              *Attorneys for Plaintiff Nathan Garofalos*

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . .    26